UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FLECTAT LTD, ON ITS OWN BEHALF
AS LEAD UNDERWRITER
SUBSCRIBING TO CERTIFICATE
NO. XSZ30510,
    Plaintiff,

v.                                                   CIVIL ACTION NO. 16-10886-MPK

KASL SEABREEZE, LLC,
SUBHASH AGRAWAL,
TAMMY ELDRIDGE,
LOU ALMONTE,
DONNA BENEVIDES,
AND CAPE COD ALARM, INC.,
    Defendants.

MEMORANDUM AND ORDER STAYING THE CASE PENDING THE
OUTCOME OF THE UNDERLYING STATE COURT ACTION.

KELLEY, U.S.M.J.

I. Introduction.

On May 16, 2016, Certain Underwriters at Lloyd's, London brought this action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, as to its rights, duties, and responsibilities under an insurance policy (the Policy). (#1.) On August 16, 2016, an amended complaint (#13) was filed, in which Flectat Ltd., the lead underwriter

1

subscribing to the relevant certificate for the Policy, was substituted as plaintiff.[1] Cross motions for partial summary judgment are now pending before the court. (##41, 43, 45.)

## II. The Facts.

The relevant facts are as follows.[2] At all times relevant to this action, KASL Seabreeze LLC owned a residential building located at 58 Center Street in Dennis Port, Massachusetts (the Property). (#42 ¶ 2.) The Policy provided commercial general liability coverage for the Property.[3] (#13 ¶ 1; #13-3; #42 ¶ 1.) On June 6, 2014, a fire broke out in the Property. (#13 ¶ 14; #42 ¶ 3.) In an effort to escape the blaze, three people, Tammy Eldridge, Lou Almonte, and Donna Benevides, jumped from second story windows of the Property. (#13 ¶ 15.) Eldridge, Almonte, and Benevides sustained injuries both from their exposure to smoke while in the burning building, and from jumping from the second story. (#13 ¶ 15; #42 ¶¶ 5, 9.)

## III. Procedural History.

On October 7, 2015, Benevides filed suit in the Massachusetts Superior Court, Barnstable County against KASL, Subhash Agrawal, a manager and officer of KASL, and Cape Cod Alarm Company, an entity whose business consists of fire and security system sales, installation, and maintenance, seeking redress for harm suffered as a result of the fire. (#13 ¶ 1; #13-2 (Benevides Complaint); #42 ¶ 10.) On October 9, 2015, Eldridge and Almonte filed a similar action, stemming from the same set of facts and naming the same defendants, in the same court. (#13 ¶

---

[1] Flectat Ltd. was substituted for the original plaintiffs, Certain Underwriters at Lloyd's, London, in an effort to ensure that diversity was established. *See infra* Section IV; transcript of May 3, 2017 hearing, #52 at 16-18.

[2] The facts are taken from the amended complaint (#13) and the parties' joint statement of facts filed as part of their cross motions for summary judgment on Count I (#42).

[3] It appears that Agrawal is seeking indemnification under the Policy based on his status as a member of KASL, *see* (#13 ¶¶ 7, 43-48), and Cape Cod Alarm is likewise seeking contractual indemnification via cross claims asserted against Flectat, *see id.* ¶ 69.

1; #13-1 (Eldridge and Almonte Complaint); #42 ¶ 10.) These cases have been consolidated into a single action which remains pending in state court. (#13 ¶ 1; #42 ¶ 10.) Thereafter, on May 16, 2016, Certain Underwriters, now Flectat, filed this action. In Count I, Flectat seeks from this court a declaration as to the extent of coverage for which it is potentially liable, either under the Policy's each occurrence limit, $1,000,000.00, or the general aggregate limit, $2,000,000.00. (#13 ¶¶ 1, 32-37.) In addition, the amended complaint seeks six other declarations that could potentially limit or negate entirely Flectat's liability under the Policy. *See id.* ¶¶ 38-80.

The case before this court has been bifurcated into Phase I, which consists of no discovery, the submission of an agreed-upon statement of facts, and cross motions for summary judgment as to Count I, and Phase II, adjudication of the remainder of the claims with whatever discovery is necessary. *See* (#31 (Joint Statement)); *see also* (#37 (adopting the proposed schedule set out in #31).) Phase I has commenced; the parties have submitted their joint statement of facts (#42); and summary judgment motions have been briefed and filed (##41, 43, 44).

Because there is a pending parallel state court proceeding, the court scheduled a hearing to hear argument on whether the case should be stayed pending the outcome of the state court action. On May 3, 2017, a hearing was held to address the parties' positions with respect to the issuance of a stay. At that hearing, the parties agreed that they were asking the court to decide Phase I, that is, to issue a declaration as to the extent of coverage for which Flectat is liable, and then to stay the action so that the case could be mediated or, in the alternative, litigated in state court. (#52 at 4-5.) The parties agreed that because of the overlap of issues between Counts II through VII in this matter and issues in the pending state court matter, this court is not an appropriate forum for Phase II. *Id.* at 11. Further, some of the parties asserted that if the court

ruled against them in deciding Phase I, they would take an appeal of that decision. *Id.* at 10-11. Finally, counsel for Cape Cod Alarm stated that at some time she intends to raise the question whether the court has diversity jurisdiction over this matter. She said that she had agreed "to put aside" this issue until "we got to Phase II," but said that she expected to raise the issue in the future and that "perhaps [she] should not have reserved that issue for Phase II." *Id.* at 14.

For the reasons set out below, after careful consideration, the court will stay the matter pending the outcome of the state court action.

## IV. Jurisdiction.

Should the stay be lifted in the future, Flectat will need to file a supplemental pleading to establish diversity pursuant to 28 U.S.C. § 1332. "In the absence of jurisdiction, a court is powerless to act," and whatever Cape Cod Alarm intends to do regarding raising the issue of jurisdiction (which from counsel's statements at the May 3 hearing was not at all clear), parties cannot confer jurisdiction on a federal court by consent. *American Fiber & Finishing, Inc., v. Tyco Healthcare Group, LP*, 362 F.3d 136, 139 (1st Cir. 2004). At the October 26, 2016 scheduling conference and again at the May 3, 2017 status conference, in response to Cape Cod Alarm's concern as to the existence of jurisdiction in the matter, counsel for plaintiff assured the court that diversity was satisfied. Flectat's position is that its citizenship, as lead underwriter subscribing to the relevant certificate for the Policy, is all that need be considered in the diversity analysis. *See, e.g.*, (#52 at 17-18.) Because the matter is being stayed and in the interest of avoiding unnecessary costs, the court has not sought briefing on the matter and will not delve further into the question at this juncture.

## V. Standard of Review.

While federal courts are typically to abstain from exercising jurisdiction over a matter only in "exceptional circumstances," *Colorado River Water Conservation Dist. v. United States*,

4

424 U.S. 800, 813 (1976), as they have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them," *id.* at 817, the Supreme Court has held that a substantially lower discretionary standard applies with regard to claims brought pursuant to the Declaratory Judgement Act when there exists a pending parallel state court proceeding. *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at 288; *DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997).

*Wilton* makes clear that the court is well within its authority to decline to exercise jurisdiction over the instant matter. *See*, *e.g.*, *U.S. Liability Ins. Co. v. Wise*, 887 F. Supp. 348 (D. Mass. 1995)[4] (acting *sua sponte*, the court declined to exercise jurisdiction); *see also Sustainable Low Maint. Grass, LLC v. Cutting Edge Sols., LLC*, No. 14-CV-11894-IT, 2014 WL 4656627, at *3 (D. Mass. Sept. 15, 2014) ("Under the [Declaratory Judgment] Act, a court may provide declaratory relief, but the decision to award such relief rests within the court's discretion.") (internal citation and quotation marks omitted).

While the Supreme Court in *Wilton* declined to set forth a test to determine the propriety of abstention, it cited with approval factors applied by the Court in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). Those factors are: (1) the scope of the pending state court proceeding and the nature of defenses open there; (2) whether the claims of all parties in interest

---

[4] While *Wise* was decided shortly before *Wilton*, the *Wise* court applied the *Brillhart* factors, *see infra*, and therefore, the case remains relevant to this court's analysis. *See Wise*, 887 F. Supp. 348.

can be adjudicated satisfactorily in the state proceeding; (3) whether necessary parties have been joined; (4) whether all necessary parties are amenable to process in the state proceeding; and (5) the virtue of avoiding uneconomical proceedings, vexatious proceedings, and gratuitous interference by a federal court with an orderly and comprehensive suit pending in a state court, presenting the same issues, not governed by federal law, between the same parties. *See Wilton*, 515 U.S. at 283.

In the years since the *Wilton* decision was handed down, a number of courts in this circuit have applied some variation of the *Brillhart* factors. *See*, *e.g.*, *Petricca v. FDIC*, 349 F. Supp. 2d 64, 67 (D. Mass. 2004) (citing *Wilton* and applying the *Brillhart* factors); *Travelers Cas. & Sur. Co. v. Boston Gas Co.*, 76 F. Supp. 2d 59, 62 (D. Mass. 1999) (same).

> The question for a district court presented with a suit under the Declaratory Judgment Act . . . is whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Mar. Terminal, Inc.*, No. CIV.A. 14-14541-DJC, 2015 WL 3952766, at *3 (D. Mass. June 29, 2015) (quoting *Wilton*, 515 U.S. at 282) (alteration in original) (internal quotation marks and some citations omitted).

VI. Discussion.

A. Nexus between Proceedings.

"A court in deciding whether to exercise its broad discretion to dismiss an action pending the outcome of a parallel state action should compare the nexus between the two suits, considering the totality of the circumstances." *Petricca*, 349 F. Supp. 2d at 67. The matter of parallel proceedings in the context of a declaratory judgment action has not been addressed head-on by the First Circuit. That said, courts in this district, relying on the First Circuit's interpretation of parallel proceedings in similar contexts, have concluded that state and federal

proceedings are considered parallel "where 'substantially the same parties are contemporaneously litigating substantially the same issues' and there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2015 WL 3952766, at *3 (quoting *Mass. Biologic Labs. of the Univ. of Mass. v. Medimmune*, LLC, 871 F. Supp. 2d 29, 36 (D. Mass. 2012)).

It is uncontroverted that Flectat is not a party to the state court action, however, this alone does not bar a classification of the relevant actions as parallel. "[A]n identity of parties is not required for proceedings to be considered parallel. There need only be an available procedural vehicle in state court by which the federal plaintiff, even if not a party in the state action, can resolve the issues raised in the federal action." *Id.* at *4 (internal citation omitted). Here, Flectat is afforded such a vehicle in the form of Mass. Gen. Laws ch. 231A, the Massachusetts Declaratory Judgment Act, by which Flectat can raise coverage questions and obtain the declarations sought in the instant action in state court. *See*, *e.g.*, *Wise*, 887 F. Supp. at 352. Such a claim can be consolidated with the underlying state action. *See id.*, citing *Worcester Insurance Company v. Fells Acres Day School, Inc*, 408 Mass. 393 (1990); *Samagaio v. Davidson,* 6 Mass. App. Ct. 773 (1979). "Such a procedural posture would achieve the favorable goal of 'resolving all litigation stemming from a single controversy in a single court system.'" *Wise*, 887 F. Supp. at 351 (quoting *Mitcheson v. Harris*, 995 F.2d 235, 239 (4th Cir. 1992)).

In short, the court finds that there is a sufficient nexus between the federal and state court proceedings, considering the totality of the circumstances, such that this factor weighs in favor of abstention.

7

B. Same Factual Issues/Risk of Piecemeal Litigation.

"Where adjudication of a declaratory judgment action requires resolution of factual questions that will be litigated in the underlying state court proceeding, practicality and wise judicial administration would counsel against proceeding with the declaratory judgment action." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2015 WL 3952766, at *4 (internal citation omitted). The parties agree that there is substantial overlap between the necessary factual determinations in the state court action and those of this case. They resolve the problem by asking the court to decide only Count I, and agree that the court should not decide Counts II through VII but stay the case and defer to the state court on those counts. The problem with this proposal is that at the May 3 hearing it was clear that whatever the court's judgment here, the losing party would appeal, resulting in further delays in the timely progress of the case and difficulties in scheduling matters between state and federal courts. The question of the efficient and orderly progression of the case is further complicated by Cape Cod Alarm's persistent assertions that this court does not have jurisdiction. Thus, even though the factual overlap in the cases may not be exact because of the parties' proposal that the court only decide Count I, there are other issues of judicial economy and scheduling that weigh in favor of abstention.

C. Necessary Parties are Amenable to Process in State Court Proceedings.

The only party who appears to want to stay these proceedings and go forward in state court is Cape Cod Alarm, who in the joint statement submitted in anticipation of the scheduling conference (#31), raised the issue of the potential for overlap between this action and the pending state court proceeding and proposed that this action be stayed pending the outcome of the state court action (#31 at 7) and seemed to reiterate this position at the May 3, 2017 hearing (#52 13-15.) That said, all parties other than Flectat are already involved in the state court proceedings

and have agreed that they will need to litigate the factual basis for Counts II-VI there and not in this court.

D. Uneconomical and Vexatious Proceedings.

Applying the fifth *Brillhart* factor – the avoidance of uneconomical proceedings, vexatious proceedings, and gratuitous interference by a federal court – the district court, in *Haley & Aldrich, Inc.*, found that "[t]he absence of any question of federal law here eliminates a potential federal interest in entertaining this case sufficient to override the inefficiencies of dual proceedings." *Haley & Aldrich, Inc.*, 158 F. Supp. 3d at 19. In the instant action, all claims arise from state law and concern matters of Massachusetts policy, *i.e.*, interpretation of contractual terms in the context of an insurance policy. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2015 WL 3952766, at *6 ("The absence of any issue of federal law weighs in favor of staying this action"); *see also Wise*, 887 F. Supp. at 350-351 ("this court believes that there is a significant state interest in having the insurance coverage issues raised in the federal declaratory judgment action decided in the Massachusetts state courts."). Even if one only considers Count I, the court notes that the question to be decided, namely, whether the facts underlying this action constitute a single "occurrence," is hotly contested by the parties and is totally governed by substantive Massachusetts law. Clearly, these considerations counsel towards abstention.

After review of the pending actions and relevant abstention factors, this court will exercise its discretion to find that a stay of the instant action is warranted.

VII. Conclusion.

For all of the reasons stated, it is ORDERED this action is to be stayed pending the outcome of the state court proceeding.[5] The parties shall file updates with the court every 6 months with respect to the status of the state court action.

                                                  /s / M. Page Kelley
                                                  M. Page Kelley
June 30, 2017                                     United States Magistrate Judge

---

[5] The effect of a stay of these proceedings as opposed to dismissal outright has been considered carefully by the court, and, in light of the Supreme Court's suggestion in *Wilton*, the matter will be stayed. *See Wilton*, 515 U.S. at 288 n. 2 ("We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."). Thus, should the need arise, upon conclusion of the state court action, the parties will have the opportunity to move to lift the stay.